IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI ADIL SYED,<br><br>     Plaintiff,<br><br> v.<br><br>EVANGELIA KLAPAKIS, et al.,<br><br>     Defendants. | CIVIL ACTION<br>NO. 11-7127 |

## OPINION

**Slomsky, J.**                     **March 1, 2013**

## I. INTRODUCTION

Before the Court are Cross Motions for Summary Judgment. Plaintiff Ali Adil Syed ("Plaintiff" or "Syed") filed a Motion for Judgment on the Administrative Record pursuant to Federal Rule of Civil Procedure 56.[1] (Doc. No. 10.) Defendants Evangelia Klapakis[2] ("Klapakis") and the United States of America (collectively "Defendants") filed a Cross Motion for Summary Judgment pursuant to Rule 56. (Doc. No. 12.) The parties filed a Joint Stipulation of Facts. (Doc. No. 11.) The single issue in this matter is whether the United States Citizenship and Immigration Services ("USCIS") erred in denying the Application of Plaintiff to Adjust His Status to Permanent Resident, which would afford him rights that could lead to citizenship. Petitioner is married to a United States citizen and for this and other statutory reasons he is

---

[1] Although Plaintiff refers to his motion as a Motion for Judgment on the Administrative Record pursuant to Rule 56, Plaintiff is seeking Summary Judgment based on the Administrative Record and has moved for relief under Rule 56, which sets forth the procedure for seeking summary judgment.

[2] Defendant Klapakis was the Field Office Director of the United States Citizenship and Immigration Services ("USCIS") Philadelphia District Office at the time of the incident. (Doc. No. 3 at n.1.)

attempting to adjust his status to a permanent resident so that in the future he would become a United States citizen. The USCIS opposes the adjustment because they found he was not eligible for the adjustment.

For reasons that follow, the Court will grant the Cross Motion of Defendants for Summary Judgment and deny the Motion of Plaintiff for Judgment on the Administrative Record.[3]

## II.     RELEVANT STATUTE

### A.   Provisions of the Immigration and Nationality Act

The Immigration and Nationality Act ("INA") allows an alien who "was inspected and admitted or paroled into the United States" to adjust his status to that of an alien admitted for permanent residence, provided that the alien fulfills three requirements: 1) the alien must apply for the benefit of legal permanent residency; 2) the alien must be eligible to receive an immigrant visa and be admissible[4] to the United States for permanent residence; and 3) an immigrant visa is immediately available to the alien at the time the application is filed. 8 U.S.C. § 1255(a) (2006). The burden remains at all times on the applicant to prove these elements. 8 U.S.C. § 1361. The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The

---

[3] In making this decision, the Court has considered the following:  Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 10), Defendants' Cross Motion for Summary Judgment (Doc. No. 12), Plaintiff and Defendants' Oppositions to the Motions for Summary Judgment.  (Doc. Nos. 13, 14.), Defendants' Reply in Support of the Cross Motion for Summary Judgment (Doc. No. 16), Plaintiff's Reply in Support of the Motion for Judgment on the Administrative Record (Doc. No. 17) and the arguments of counsel at the June 14, 2012 hearing (Doc. No. 19).

[4]  The concept of "admissibility" is central to the outcome of this case.  It is discussed in more detail infra.

scope of the inspection and authorization process is set forth in 8 C.F.R. § 1235.1.[5]  Additionally,

any immigrant at the time of application for admission who does not possess a valid entry

document, such as an unexpired immigrant visa, reentry permit, or border crossing identification

card is deemed inadmissible.  8 U.S.C. § 1182(a)(7)(A)(i)(I).

Despite these conditions for "admission," an applicant may be exempt from the

"admission" requirement in Section 1255(a), supra, if the applicant meets the requirements of

8 U.S.C. § 1255(i) (adjustment in status of certain aliens physically present in the United States).

Under section B of this statute, an alien may adjust his or her status, despite ineligibility under

Section 1255(a), if the applicant establishes that he or she:

> . . . is the beneficiary (including a spouse or child of the principal alien, if eligible
> to receive a visa under section 1153(d) of this title) of –
>> (i) a petition for classification under section 1154 of this title that was
>> filed with the Attorney General on or before April 30, 2001; or
>> (ii) an application for a labor certification under section 1182(a)(5)(A) of
>> this title that was filed pursuant to the regulations of the Secretary of
>> Labor on or before such date; and . . .

8 U.S.C. § 1255(i)(B).[6]  Under subsection (i), a petition for classification under Section

1154 refers to a petition to be classified as an immigrant by means of a family

relationship.  8 U.S.C. § 1154.  Under subsection (ii), an application for a labor

---

[5] Alien applicants for admission shall:
> . . . present whatever documents are required and shall establish to the satisfaction
> of the immigration officer that he or she is not subject to removal under the
> immigration laws, Executive Orders, or Presidential Proclamations and is entitled
> under all of the applicable provisions of the immigration laws and this chapter to
> enter the United States. A person claiming to have been lawfully admitted for
> permanent residence must establish that fact to the satisfaction of the inspecting
> immigration officer and must present proper documents in accordance with
> § 211.1 of this chapter.

8 C.F.R. § 1235.1(d)(1).

[6]  Under Section 1255(i), other means to adjust status are provided.  They are not relevant here
and were not addressed by the parties.

certification refers to an application for a determination by the Secretary of State and

Attorney General that: 1) "there are not sufficient workers who are able, willing, qualified

. . . and available at the time of application for a visa and admission to the United States

and at the place where the alien is to perform such skilled labor;" and 2) "the employment

of such alien will not adversely affect the wages and working conditions of workers in the

United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(I-II).

## B.  The Family Unity Program

Another aspect of immigration law is relevant to this case.  It is known as the Family

Unity Program ("FUP") and is described at length in a decision of the Ninth Circuit:

> The Family Unity Program was created to implement certain provisions of the
> Immigration Act of 1990, Pub. L. No. 101–649, § 301, [104] Stat. 4978
> ("IMMACT 90"), which is set out as a note in 8 U.S.C. § 1255a. The regulations
> governing the FUP are contained in 8 C.F.R. § 236. The FUP permits qualified
> alien spouses or unmarried children of legalized aliens, who entered the United
> States before 1988 and have continuously resided in the United States since that
> time, to apply for the benefits of the program, which include protection from
> deportation and authorization to work in the United States.
>
> As the name implies, the FUP is designed to help families stay together while the
> beneficiaries adjust to [legal permanent resident] status. FUP beneficiaries are
> granted a two-year period of protection from deportation, which the regulation
> terms "voluntary departure." 8 C.F.R. § 236.15(c).  An FUP beneficiary may
> apply to extend this grant of voluntary departure so long as he remains eligible for
> the program. 8 C.F.R. § 236.15(e).  An FUP beneficiary may also apply to travel
> outside the United States. 8 C.F.R. § 236.16.  Upon return from authorized travel,
> an FUP beneficiary, provided he remains admissible, is "admitted in the same
> immigration status as the alien had at the time of departure, and shall be provided
> the remainder of the voluntary departure period previously granted under the
> Family Unity Program." Id.

Garcia-Quintero v. Gonzales, 455 F.3d 1006, 1009-10 (9th Cir. 2006).

### III.    FACTUAL BACKGROUND

On October 6, 1986,[7] Plaintiff Ali Adil Syed, a Pakistani citizen, entered the United States illegally without inspection.  (Doc. No. 1 ¶ 4.)  Since that time, Syed has resided in the United States, and currently resides in Pennsylvania with his wife, Shabman Syed.[8]  (See id. ¶ 1; Doc. No. 11 ¶ 3.)  On April 28, 2004, Shabman Syed filed a Form I-130 Petition for Alien Relative naming Plaintiff as the beneficiary.  (Doc. No. 11 ¶3.)  Form I-130 is submitted for an alien seeking permanent residence in the United States by virtue of a relationship with a United States citizen.  See 1 Immigr. Law and Defense § 4:38.  Syed's wife was a lawful permanent resident at the time she filed the I-130 petition, which was approved on November 9, 2005.  (Doc. No. 11 ¶ 3.)  Over five years later, on August 14, 2009, Plaintiff's wife became a naturalized United States citizen.  (Id.)  On October 13, 2005, Plaintiff applied for voluntary departure benefits under the FUP.  (Doc. No. 1 ¶ 4.)  On January 26, 2006, the USCIS approved Syed's application for voluntary departure benefits, and also approved two extensions of voluntary departure benefits through June 2011 and June 2013 respectively.  (Doc. No. 1 ¶ 4; Doc. No. 11 ¶ 5-6.)

On September 29, 2009, Plaintiff filed a Form I-485 Application to Register Permanent Residence or Adjust Status with the USCIS, based upon the approved I-130 Petition of his wife, who was now a United States citizen.  (Doc. No. 11 ¶ 7.)   Plaintiff's application sought an

---

[7] This date is noted on Plaintiff's Form I-485 Application to Register Permanent Residence or Adjust status.  It is not a confirmed date because he entered the United States without inspection.  (Doc. No. 11 ¶ 2.)

[8] The Complaint refers to Plaintiff's wife as "Shabman Syed" (Doc. No. 1 ¶ 5), while the Joint Statement of Facts refers to Plaintiff's wife as "Shabman Ali" (Doc. No. 11 ¶ 3).  The Court will refer to Plaintiff's wife as "Shabman Syed" for purposes of consistency.

adjustment to that of a person admitted for permanent residence under the INA, codified at 8 U.S.C. § 1255.  (See Admin. R. No. 1.)

Plaintiff's application was not automatically granted, but was met with a request for information from the INS.  On October 23, 2009, the USCIS issued to Plaintiff a standard I-485 Form entitled: "Request for Initial Evidence," seeking evidence of lawful "admission" to the United States or eligibility to adjust status under 8 U.S.C. § 1255(i), which would allow him to have a lawful "admission."  (Admin. R. No. 10.)  On January 6, 2010, Plaintiff responded in a letter brief filed by his counsel, acknowledging that he entered the country without inspection, but contending that his acceptance into the FUP pursuant to § 242B(e)(2), supra, constituted an "admission" which rendered him eligible to apply for adjustment of status as an immediate relative under the INA, specifically Section 245(a), which is codified at 8 U.S.C. § 1255(a). (Doc. No. 11 ¶ 9.)

On April 11, 2011, the USCIS issued a Notice of Intent to Deny Plaintiff's Form I-485 application because: 1) he was not inspected and admitted to the United States within the meaning of 8 U.S.C. § 1255(a); and 2) he did not establish that he was the beneficiary of a qualifying petition or labor certification filed on his behalf on or before April 30, 2001 as required under 8 U.S.C. § 1255(i).  (Doc. No. 11 ¶¶ 11-12.)  On May 5, 2011, Plaintiff responded by arguing once again that the voluntary departure benefits under the FUP constituted an "admission."  (Id. ¶ 12.)  In a July 19, 2011 letter signed by Defendant Klapakis, the USCIS denied Plaintiff's Form I-485 application because he did not establish his eligibility for adjustment under 8 U.SC. §§ 1255(a) or 1255(i) and therefore did not establish that he was "admissible" to the United States.  (Id. ¶¶ 13-14.)

On November 15, 2011, Plaintiff filed in the instant case a one-count Complaint against Defendants.  (Doc. No. 1.)  Plaintiff seeks review of the USCIS determination that he was ineligible for an Adjustment of Status to a person admitted for permanent residence.  (Id. ¶¶ 10, 15.)  Plaintiff asserts that he was "admitted" by extra-statutory means under the FUP, the rejection of his Application for Adjustment should be overturned and the USCIS should be compelled to adjudicate his Application for Adjustment on the merits.  (Id. at 9, ¶ 2.)

## IV.    STANDARD OF REVIEW

### A.    Administrative Procedure Act

The Court has jurisdiction to review the USCIS finding of ineligibility for an adjustment of status pursuant to the Administrative Procedure Act ("APA").  5 U.S.C. § 702.  While the "USCIS's adjudication of an adjustment of status application is 'committed to agency discretion,' and is therefore not subject to review under the APA," United States ex rel. Vaso v. Chertoff, 369 F. App'x 395, 400 (3d Cir. 2010) (citing 5 U.S.C. § 701(a)), the "[d]etermination of eligibility for adjustment of status — unlike the granting of adjustment itself — is a purely legal question and does not implicate agency discretion."  Pinho v. Gonzales, 432 F.3d 193, 204 (3d Cir. 2005). Accordingly, the Court may review the determination of the USCIS that Plaintiff was ineligible for adjustment of status.

In reviewing an agency's statutory interpretation, courts must conduct a two-step analysis.  First, a court must determine whether "Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, U.S.A., Inc. v. Natural Res. Def. Counsel, Inc., 467 U.S. 837, 842-43 (1984).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that

language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

Second, if a statute is unclear or ambiguous on a particular issue, the court must determine "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. The court should defer to a reasonable interpretation and "not simply impose its own construction on the statute." Id. The APA empowers the Court to hold as unlawful and to set aside agency action, findings, and conclusions which the court finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a) (2006). The Supreme Court has clarified the "arbitrary and capricious" standard, holding that:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Assoc. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Under this narrow scope of review, the "court is not to substitute its judgment for that of the agency." Id. However, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

Courts in the Third Circuit afford great deference to an agency's interpretation of immigration law. See Pinho, 432 F.3d at 213 ("[T]he executive branch is entitled to great deference in formulating immigration policy . . . ."); Acosta v. Ashcroft, 341 F.3d 218, 222 (3d

Cir. 2003) (finding that the Board of Immigration Appeals ("BIA") should be afforded deference in interpreting the INA).

B.      **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence, making all reasonable inferences from the evidence, in the light most favorable to the non-moving party.  Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Anderson, 477 U.S. at 255.  If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

## V.    ANALYSIS

### A.    Plaintiff is Ineligible for Admission Pursuant to 8 U.S.C. §§ 1101(a)(13)(A) and 1255(i)(B)

Under <u>Chevron</u>, "[i]f the intent of Congress [in drafting a statute] is clear . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43. To be eligible for an adjustment of status under the various provisions of Section 1255 of the INA, an applicant must demonstrate that he or she was either (1) lawfully admitted to the United States, or (2) the beneficiary of a petition for classification or an application for a labor certification filed on or before April 30, 2001.      8 U.S.C. § 1255(a), (i)(1)(B)(i-ii).

First, the parties do not dispute that Plaintiff entered the United States illegally without inspection. "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Plaintiff concedes that he was not "admitted" to the United States as defined by §1101(a)(13)(A) because he entered without inspection.   (Doc. No. 10 at 2.) The USCIS, therefore, properly determined that Plaintiff is ineligible for adjustment under 8 U.S.C. § 1255(a).

Second, no claim has been made here that Plaintiff is eligible for an adjustment of status under 8 U.S.C. § 1255(i)(B), which creates another way to be properly admitted under law. Specifically, as far as this Court can tell, Plaintiff has not asserted he was the beneficiary of a qualifying visa petition or labor certification that was filed on his behalf on or before April 30, 2001. The USCIS therefore properly determined that Plaintiff is ineligible for adjustment of status under 8 U.S.C. § 1255(i). Consequently, under the plain language of the INA, Plaintiff is ineligible for an adjustment of status to a permanent resident because he is unable to meet either of the enumerated statutory requirements. As such, it is apparent that the USCIS has given

proper effect to the unambiguous intent of Congress, viewing the administrative record in the light most favorable to the Government as the non-moving party.

**B.    Plaintiff is Ineligible for Admission Under the FUP**

Recognizing his failure to meet the standard for admissibility by adjusting his status under Sections 1255(a) and (i), Plaintiff argues instead that there is another means to meet the test of admissibility.  He contends that the voluntary departure status granted to him by the USCIS under the FUP constitutes an admission rendering him eligible for adjustment of status to a permanent resident.  In so arguing, Plaintiff relies upon a court decision that has expanded the definition of "admission" beyond the statutory definition in § 1101(a)(13)(A).

Plaintiff's contentions are not persuasive for the following reasons.  First, Congress has codified the FUP in a note to 8 U.S.C. § 1255a.  Section 301(f) of the FUP provides as follows "[n]othing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to obtain benefits under this section."  Pub. L. 101-649, § 301(f), 104 Stat. 4978.

Second, the BIA has held that a grant of FUP benefits, including voluntary departure, does not constitute an "admission in any status." In re Reza-Murillo, 25 I. & N. Dec. 296, 299 (BIA 2010).  Although the Reza-Murillo decision dealt with a section of the INA concerning "cancellation of removal" as codified in 8 U.S.C. § 1229b(a)(2), the case still concerned a request to be found admissible under the FUP.  The court rejected any notion that the provisions of the FUP would allow an alien to be admitted in any status.

As noted above, under the Supreme Court's decision in Chevron, this Court and an agency must give effect to the unambiguous intent of Congress.  In the note on the FUP attached to Section 1255a, Congress has clearly expressed that the grant of FUP benefits does not

constitute an "admission" into the United States. This Court, like the BIA, must give effect to the clear language of the FUP.

Plaintiff, in arguing that the FUP gives him the benefit of being admitted in any status for purposes of an adjustment of status, cites Garcia-Quintero v. Gonzalez, 455 F.3d 1006, 1016 (9th Cir. 2006), which held that "acceptance into the [FUP] constitutes being 'admitted in any status' for the purposes of cancellation of removal."[9] The Garcia-Quintero decision is not persuasive authority. In support of its holding, the court in Garcia-Quintero relied on an earlier decision of the Ninth Circuit, Cuevas-Gaspar v. Gonzales, 430 F.3d 1013, 1029 (9th Cir. 2005). The court in the earlier Cuevas-Gaspar case discussed whether an unemancipated minor child may impute the status of his parent to meet the INA definition of "admission" for purposes of satisfying the cancellation of removal requirement. Id. The court concluded that a minor can impute the status of his parent in order to qualify for admission and therefore would satisfy a precondition for the cancellation of removal. Id.

In 2012, however, the United States Supreme Court in Holder v. Martinez Gutierrez, abrogated the holding of the Ninth Circuit in this case and held that each alien seeking cancellation of removal must satisfy the INA definition of admission independently, rather than through imputation of the status of a parent. 132 S. Ct. 2011 (2012). In Holder, there was a challenge to a BIA ruling that had disagreed with the position of the Ninth Circuit. The BIA had held that an alien seeking cancellation of removal must satisfy the definition of admission independently, rather than through the status of a parent. The Supreme Court in Holder held that

---

[9] Plaintiff also cites two opinions to support this claim that the BIA recognizes extra-definitional forms of admission. See In re Rosas, 22 I. & N. Dec. 616 (BIA 1999); In re Quilantan, 25 I. & N. Dec. 285 (BIA 2010). While this claim may be accurate in certain instances, the BIA has since dealt with the precise matter at issue here and held that the grant of FUP benefits does not constitute an "admission." See In re Reza-Murillo, supra.

the position of the BIA was a reasonable construction of the statute and was consistent with the statute's text. Since <u>Holder</u> abrogates <u>Cuevas-Gaspar</u>, which was the basis of the <u>Garcia-Quintero</u> decision, it calls into question the rational of the <u>Garcia-Quintero</u> decision that is relied upon by Plaintiff.

In this case, the clear text of Section § 301(f) of the FUP states that nothing in this section shall be construed as authority for an alien to apply for admission or be admitted under the FUP. The BIA's holding in <u>In re Reza-Murillo</u>, <u>supra</u>, is clearly consistent with the statute's text and deserves deference from this Court. This Court is persuaded that the plain language in the FUP and the BIA's reasoning in <u>In re Reza-Murillo</u> supports the position of Defendants.

Congress did not intend the grant of FUP benefits to constitute an "admission" of an alien. Rather, under § 301(f), Congress specifically stated that the granting of FUP benefits does not authorize an alien to be admitted to the United States. Therefore, the USCIS correctly read the plain language of the INA when it found that Plaintiff is ineligible for a change of status because he was never "admitted" to the United States.

Accordingly, the decision of USCIS here should be afforded deference. <u>See</u> <u>Chevron</u>, 467 U.S. at 837. The USCIS action on the request for permanent residency was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" when it determined that Plaintiff was ineligible for adjustment of status. <u>See</u> 5 U.S.C. § 706(2)(a).

## VI.      CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Judgment on the Administrative Record and grant Defendants' Cross Motion for Summary Judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALI ADIL SYED,

                    Plaintiff,

    v.                                                    CIVIL ACTION
                                                          NO. 11-7127
EVANGELIA KLAPAKIS, et al.,

                    Defendants.

## ORDER

**AND NOW**, this 1st day of March 2013, it is **ORDERED** that:

1)  Defendants' Cross Motion for Summary Judgment (Doc. No. 12) is **GRANTED**.

2)  Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 10) is

    **DENIED**.

3)  Judgment is entered in favor of Defendants and against Plaintiff.

4)  All pending motions are **DENIED** as **MOOT**.

5)  The Clerk of Court shall close the above-captioned matter for statistical purposes.


                              BY THE COURT:


                              /s/ Joel H. Slomsky
                              JOEL H. SLOMSKY, J.